Kimball v. Morrison.

40   117
67   539

## KIMBALL *v.* MORRISON.

When mortgaged real estate is. attached, and the attaching creditor demands an account, on oath, of the mortgagee, of the amount due upon his mortgage, and no account is rendered within fifteen days, or a false one is rendered, the effect of such failure to render a true account is to discharge the mortgage, as against the attachment of that creditor who made the demand for an account ; but when there are several attaching creditors of the same mortgaged real estate, the mortgage remains in full force against all other attaching creditors except such as have thus made a demand for an account.

But, when mortgaged personal property is attached, and the officer who makes the attachment makes a demand of the mortgagee for an account, in his own name and in his official capacity, and no account is rendered within fifteen days, or a false one is rendered, then he may hold such property discharged from such mortgage, and it may be again attached and held as against such mortgage, by such officer, at any time before or after the expiration of said fifteen days, so long as such officer holds said property in his actual custody by virtue of the attachment under which said demand was made ; and no other or further demand for an account need be made by such officer while thus holding the property, in case of such subsequent attachment.

A demand thus made by the officer upon the mortgagee for an account, is sufficient, without designating the creditor who has made the attachment, the claim sued, the nature of the suit, or the court at which the writ is returnable.

Kimball *v.* Morrison.

THIS action is assumpsit, for money had and received, brought by Moses Kimball against George Morrison, the defendant, a deputy-sheriff.

It was agreed by the parties that on the 11th day of September, 1858, certain goods were the property of Holton & Brown, subject to a mortgage, duly executed and recorded, from them to the plaintiff, to secure a subsisting debt, a portion of which was still due and unpaid; that on that day the defendant attached the same goods upon a writ in favor of John H. Rowell, and against said Holton & Brown, and on the same day made a personal demand of the plaintiff for an account under oath of the amount of the debt or demand secured by said mortgage. The plaintiff did not, within fifteen days, nor at any time render any account. On the 20th day of October, 1858, a writ in favor of Gregory and others was placed in the defendant's hands, upon which he attached the same goods, subject to the former attachment, the goods at the time being in the defendant's actual possession. No other or further demand of the plaintiff for an account was made than that above mentioned. The goods were sold, and the avails were more than sufficient to satisfy the Rowell debt and costs. And, for the purposes of this case, it was agreed that said Rowell debt was satisfied, and that there was a balance in the hands of said defendant, which he claimed to hold under and by virtue of the attachment in the said suit in favor of Gregory and others, which suit was still pending. It was further agreed, that the sale of the goods by the defendant, and the receipt in cash of the amount for which the goods were sold by him, as well as a demand of the balance aforesaid, by the plaintiff, of the defendant, shall be admitted and not denied in any and all stages of the proceedings in this suit; and that such judgment should be rendered as in the opinion of the court the facts warrant; and in case judgment should be ordered for the

plaintiff, damages should be assessed by an auditor, unless agreed upon by the parties.

The following is a copy of the demand made by the defendant :

"GRAFTON ss.—September 11, 1858.

"MOSES KIMBALL, *Sir* — I have this day attached the goods in the store occupied by E. O. Holton ; a quantity of wood and lumber ; also, a quantity of goods, hardware, stoves, &c., in the Hutchins store, as the property of Holton & Brown ; and also a wagon and sleigh, as the property of E. O. Holton ; said to be subject to a mortgage to you ; and I now demand of you an account, under oath, of the amount of the debt or demand secured by said mortgage.

GEORGE MORRISON, Deputy-Sheriff."

*Woods & Binghams*, for the plaintiff.

1. The statute giving a third person the right to inquire into and avoid the obligations of a solemn contract between other parties, if not unconstitutional and absolutely void, yet is so near it that the court should require the most full and satisfactory notice and description to be given in the demand, of the suit, the names of the parties, the claim sued, and the court to which the same is returnable, that the nature of the case will admit. This was not done.

2. We say that, if the demand was sufficient, the defendant can hold no portion of the avails of the sale, except enough to satisfy the Rowell debt. Our construction of the statute is that it is a condition precedent, to be performed by *each* creditor before he acquires a superior right to a mortgagee to have his debt first paid out of the avails of the mortgaged property, that he bring his suit, put his writ in the officer's hands, and have the officer

make an attachment and a proper demand, and wait fifteen days thereafter for a disclosure, when, if none is made, his right is perfected. The statute makes no allusion, and can have no reference, to any other creditor or creditors than the attaching creditor. The demand being made by the officer can have no greater effect than if made by the creditor, he being simply the agent of the creditor. If, by a failure to disclose on the demand of one creditor, the mortgagee is forever precluded from asserting his right as to the other creditors, are they not as much bound by his disclosure, if he make one, though he may have secured a large part of his debt after said disclosure and before they make their attachments? Again : Suppose that the attaching creditor making the demand, is settled with by the debtor, and the mortgagee makes no disclosure, is his mortgage thereby discharged as to other creditors *ipso facto ?* These are only instances of the many difficulties that arise from this construction. There is an analogy between this case and that of a person trusteed, where he fails to appear and is defaulted, and is thereby made liable to pay the whole debt; but it does not follow that because he has been defaulted in that suit, all the other creditors of the defendant may enter suits and take judgments against him as trustee, without notice by reason thereof.

*A. P. Carpenter*, for the defendant.

I. The demand for an account made by the defendant is sufficient, both in form and substance. It contains all that is required by the statute, and is according to the form given in the Justice and Sheriff. Comp. Stat., ch. 195, sec. 18 ; Bell's Justice & Sheriff, 62.

II. A second demand was unnecessary. (1). By the express language of the statute, when a demand for an account has been made, and none rendered within fifteen

days, the officer may hold the property discharged of the mortgage; that is to say, he is authorized and bound to treat the whole of it, and not merely sufficient thereof to satisfy the debt upon which it has been attached, in all respects as the property of the debtor. It is wholly immaterial to the rights of the mortgagee upon how many different writs, or upon what and how large claims, the attachment is made, and the statute requires no information to be given him on these points; and we submit that it is clear that in case of several simultaneous attachments one demand is sufficient. But why, after making one attachment, may not the officer, before making other attachments, wait until he can learn whether they will be of any avail? What possible advantage is to be derived by any body from requiring the parties to be at the expense of making the attachments before that time? Now, suppose the officer makes fifty successive attachments on as many successive days, what possible reason can be urged for requiring him to make a new and special demand upon each attachment? The *letter* of the statute certainly does not require it. By the one demand, made upon the first attachment, the mortgagee has received all the notice necessary to a protection of his rights, and the officer done all that is necessary to acquire the requisite information. (2.) The sole object of the demand is to enable the officer to make a tender of the amount due; and in order to enforce a compliance with the officer's demand, the statute gives to a refusal or neglect of the mortgagee to render an account the same effect precisely as to a tender where an account is rendered. We say that this is, beyond question, the intent of the statute; and the plaintiff, in order to maintain his position, must contend that the effect of a tender by the officer is only to discharge the mortgage as against the particular attachment made prior to the demand; and that, upon making a subsequent attachment, he must go through the same ope-

ration. (3.) A comparison of the provisions of sections 17 and 18 with those of sections 8 and 9 of the same chapter, where the same general object is sought in regard to real estate, strongly fortifies our position. Sections 8 and 9 provide that upon such payment, or tender, or neglect, the rights of the mortgage, &c., "*as against the attachment*, shall cease;" section 18, "the officer shall hold the property *discharged of the mortgage.*" And we contend that the use of different language shows that the intent of the legislature was different. Again, by section 8, the creditor only can make the payment or tender, while, by section 17, the *officer himself*, as such, may make it. There are good and sufficient reasons, growing out of the nature of the property, for making the distinction. The officer acquires by his attachment no right whatever in or control over real estate, whereas he has an absolute right, as against the world, to the possession of personal property attached. He is responsible to both creditor and debtor for its safe keeping; he has an interest in it which is independent of any rights of the creditor, and it can be attached by no other officer while it remains in his possession.

SARGENT, J.* The difference in the phraseology of the statute, on the subject of the demand by an attaching creditor for an account of the mortgage debt, in the two cases of a mortgage of real estate, and a mortgage of personal property, is so marked and obvious that it is difficult to regard it as accidental and unmeaning.

In the case of an attachment of real estate mortgaged, the language of the statute is, that the creditor or officer serving the writ may demand the account; and if it is not rendered, or if a false one is given, the interest of the

---

* An opinion had been partially prepared in this case by SAWYER, J., before his resignation, and his conclusions are substantially incorporated herein.

mortgagee "shall, as against such attachment and the rights acquired under it, cease." In the case of personal property it is that, if the account is not rendered, or if a false one is given, "such property shall be holden discharged from the mortgage." Both of these provisions, declaring the effect upon the mortgage lien of the neglect of the mortgagee to give a true account of the debt in the two cases respectively, were incorporated together into the statutes at the revision in 1842, and were then first introduced as new provisions. Rev. Stat., ch. 184, secs. 7 and 16. Prior to this there was no statute provision for demanding an account of the mortgagee of real estate by an attaching creditor. It could be done only by the mortgagor or the person having his estate. N. H. Laws (Ed. of 1830) 486. By the act of December 12, 1832, (ch. 91), which first authorized a demand in case of personal property mortgaged, the mortgage lien was not affected by the neglect of the mortgagee to render the account. He was subjected to the liability to refund the excess paid by the creditor to redeem the property from the mortgage, in order to open it to the attachment, over and above what was due upon the mortgage, with twelve per cent interest ; and this was all. Under this act, personal property mortgaged could not be seized either on mesne process or execution against the mortgagor, until the mortgage debt was paid. The demand for the account was to be made when the creditor, in the words of the act, "was desirous of attaching the property," and it was necessary for him to effect a discharge of the mortgage lien before the property was open to his attachment. To enable him to make payment of the exact sum due upon the mortgage, he was authorized to demand the account. If, however, this was refused by the mortgagee, he had no remedy, but was compelled to abandon his purpose of attaching the property, or to make the payment in uncertainty as to the amount due, and at the peril of being held liable as a

trespasser for intermeddling with the property, if the whole amount should not be paid.   To remedy this embarrassing state of the law, the provisions of the Revised Statutes were adopted, that the creditor may attach before payment of the mortgage debt, and retain the property in the custody of the officer until the account is rendered, without such payment, and that the property shall be holden discharged from the mortgage upon the failure of the mortgagee to render the account demanded.   At the same time the corresponding provisions in reference to real estate mortgaged were introduced—that the attaching creditor may demand the account, and, if not rendered, the interest of the mortgagee, as against the attachment and all rights acquired under it, shall cease.

It is clear that where there is but one attachment of the property mortgaged, whether it be real or personal, the meaning and operation of the provisions declaring the effect upon the mortgage lien of the failure of the mortgagee to render the account, must be the same in the two cases, so far as they relate to the property applied in satisfaction of the execution.   Whether the provision is, as in the case of real estate, that the interest of the mortgagee, as against the attachment and rights acquired under it, shall cease ; or, as in the case of personal property, that the property attached shall be held by the officer discharged from the mortgage, the effect is, in the case of but one attachment, to open the property to the attachment and to the execution which may be recovered in the suit, precisely as if the mortgage had not been given, so far as relates to the particular property sold or levied upon to satisfy the execution.   The personal property sold, and the real estate set off on extent, and applied in satisfaction of the execution, are in effect declared to be free from the mortgage, and from all claim of the mortgagee under it.

But in the case of an attachment of personal property, a greater amount of the property mortgaged may be

Kimball *v.* Morrison.

attached and taken into the custody of the officer than is necessary to be sold in order to satisfy the execution ; and the property, being subjected to a second attachment before sale, and after a demand by the first attaching creditor, and a refusal to account, the question is, what effect the refusal of the mortgagee to account upon the demand of the first attaching creditor is to have upon the overplus of the property attached, after satisfying his execution ? Is the whole property held, after such refusal, discharged from the mortgage, so that the overplus is held by the second attachment, without further proceedings on the part of the second attaching creditor to obtain a discharge of the mortgage lien, as to the overplus ? or is this held by the officer for the use of the mortgagee unless the after attaching creditor shall effect a discharge of the mortgage lien upon it, by demanding an account also on his part ?

The same questions may arise in reference to real estate mortgaged, which has been attached by one creditor, and, after a demand and neglect to account, is again attached by another, and the language of the statute would seem to have been adopted with reference to such a case—that " the interest of the mortgagee in such real estate shall, as against such attachment and the rights acquired under it, cease." This provision expressly limits the effect of a failure to render the account to the attachment on account of which the demand was made. Each creditor, or the officer making the attachment for him, is to demand the account, and proceed independently of the others. A second attachment, made subsequently to the demand and refusal to account under the first, would hold the residue of the land, after the extent of the execution in the first suit, but it would hold it subject to the mortgage as a subsisting incumbrance against that attachment, unless the creditor, or officer in his behalf, should have demanded the account, and it should also have been refused on his demand. In the case of real estate, it would seem to admit

of no question that this was the intention of the legislature in declaring that the interest of the mortgagee should cease "as against the attachment." In the other case— that of an attachment of personal property mortgaged —the statute speaks in widely different terms. It declares that "such property"—that is, the property attached, and which the officer is authorized to hold in his custody until the account is given, without payment or tender of the mortgage debt—"may be holden discharged from the mortgage." The two provisions were enacted at the same time, as branches of the attachment law, and are to be construed together, as statutes *in pari materia.* In reference to such enactments, the difference in their phraseology may well be understood to have been adopted in order to give to them the difference of meaning expressed in their literal terms. When the legislature had qualified the effect upon the mortgage lien to be given to the refusal of the mortgagee to account in the case of real estate, by limiting it to the attachment on account of which the demand was made; and in the other case—that of personal property—have declared in the broadest terms that the effect of the refusal shall extend to all the property held by the officer, and in express terms discharge it from the mortgage; it is inconsistent with the recognized rules for the construction of statutes to disregard the marked distinction which the legislature have thus made, and engraft upon the latter provision the same qualification which they have expressed in the former, although studiously omitted in the latter. Such qualification undoubtedly may be supplied by judicial construction, when, from the subject matter of the enactment and the nature of its other provisions, a reasonable construction requires it. The plaintiff's case proceeds upon the ground that the latter provision is to be construed with the same implied qualification as that which is expressed in the former; and that in such case the property may be holden dis-

charged from the mortgage as to the attachment under which the demand was made, but that the mortgage lien remains valid as against after attachments.

I think there are satisfactory grounds upon which it may be understood the legislature proceeded in omitting the qualification in the one case and inserting it in the other, with the intention to give to the provisions a corresponding difference in their operation and effect.

In making the attachment of real estate the officer does not intermeddle with the land ; and whatever may be the number of the attachments, they may be made by different officers. The several attachments are in all respects independent proceedings. There is no such privity among the creditors or officers making the attachments, that any one can be supposed to know whether another has demanded the account or not. Each creditor judges for himself of the propriety of making the demand. The object in making it is ordinarily to obtain information of the amount of the incumbrance which may be useful in making sale of the equity. This may be of no importance to the creditor whose attachment is first in order; because, without it, the proceeds of the sale may cover his claim; nor to the last, because they may not reach his claim, even with it. The interests of some of the creditors may require that the demand be made on the ground that, if the account is not rendered, the extinguishment of the incumbrance, as against their attachments, may bring a remnant of the land within their reach, while it may conflict with the interests of the earlier attaching creditors that the mortgage lien should be extinguished, and they compelled to take satisfaction in land, by extent, instead of receiving it in money by a sale of the equity.

If, therefore, the provision of the statute, declaring the effect of a failure by the mortgagee to render the account in the case of mortgaged real estate is to be construed as meaning that the land is to be treated as free from the

mortgage by each creditor who has demanded the account, or in whose behalf it has been demanded by the officer making the attachment, and not to be so treated by any other creditor, there are obvious reasons for so enacting in reference to mortgaged real estate, in the nature of an attachment of such estate, and the course of proceedings in making and consummating it, which have no application to the case of an attachment of personal property mortgaged.

In making such attachments, whatever may be their number, they must necessarily be made by the same officer who first takes it into his custody, and retains it for the common benefit of all the creditors attaching. He and they are liable to the mortgagee as co-trespassers, if the mortgage lien is not removed. Each has the same purpose to subserve in making the demand, to wit, to ascertain the precise amount due, in order to make payment and thereby open the property to their several attachments, and enable the officer to hold it as security for the satisfaction of their several judgments, and relieve themselves from a common liability to the mortgagee on account of thus attaching and holding it. There is no conflict of interests among them in reference to the demand ; all are alike interested, and on the same grounds, in having it made. If the mortgage lien is discharged, whether by payment or by a neglect of the mortgagee to render the account, satisfaction of their judgments is obtained by one common proceeding—a sale of the property—instead of separate extents, as in the case of real estate. In making the demand, therefore, the officer may properly be understood to act for all the creditors, and each creditor for all the others. There may be said to be such privity between them and their common agent, the officer, that each may be presumed to know whether there has been a demand for the account and a neglect to render it ; and if not rendered upon demand made in behalf of one of them,

it would seem to be a most idle ceremony to require the demand to be repeated in behalf of every other.

It must be understood that the legislature acted upon these considerations of the wide distinction between the nature of an attachment of real estate and one of personal property in adopting the difference of phraseology in the two enactments; and that when it is declared in one of them, in reference to personal property, that the officer shall hold it discharged from the mortgage, the language is to be understood in its literal meaning; as held by him discharged from the mortgage, not only as against the attachment under which it was held when the demand was made, but as against all other attachments placed by him upon it while it thus continues in his actual custody, by virtue of an existing attachment, in a suit in which he has made such demand. Upon demand for the account made by the officer or any creditor attaching, the neglect of the mortgagee to render it removes the mortgage lien from all the property held by the attachment under which it was in the officer's custody when the demand was made, and exposes it, while it continues so to be held by him by virtue of such attachment, to after attachments of other creditors, free from the mortgage. Consequently if, upon the sale of the property on execution, there is a surplus in his hands beyond what may be required to satisfy the judgments of those creditors under whose attachments it was held when the demand was made, such surplus may be applied, as in ordinary cases of personal property attached, upon the next suit in the order of the attachments.

It does not become necessary to consider whether the effect would have been the same, or a different result would have followed, if a single creditor had for himself alone made the demand upon the mortgagee, or if the officer in his demand had specified the particular claim or suit upon which the attachment was made under which

he demanded the account. We have no doubt that the demand in this case, as made by the officer without designating the particular writ upon which the property was attached, conveyed all the information to the mortgagee which he needed to enable him to comply with the provisions of the law, and all that the statute required, and was, therefore, sufficient, and the attachment on the Gregory writ, under the circumstances, was valid to hold the balance of the property, after satisfying Rowell's claim.

*Judgment for the defendant.*